## TITMAN et al. v. FORD MOTOR CO.

District Court, S. D. New York. November 5, 1928.

Henry J. Lucke, of New York City, for plaintiffs.

Nicoll, Anable & Nicoll, of New York City (Drury W. Cooper, of New York City, Charles R. Halbert, of Detroit, Mich., and De Lancey Nicoll, Jr., of New York City, of counsel), for defendant.

WINSLOW, District Judge. This action involves plaintiff's patent issued to J. R. Titman, October 6, 1925, No. 1,556,179. The only claims in suit are 7 and 9:

"7. An adjusting device for carburetors provided with a rotatably adjustable needle valve stem and a choke having a spring normally holding said choke in its open position, comprising arm means, a manipulating member secured adjacent one end of said arm means for imparting at will either rotational or axial displacement or both to said arm means, said arm means comprising telescopically related members for securing varying effective length of said arm means incident upon axial displacement of said manipulating member, articulated means for said arm means for transmitting rotational movement to said adjustable needle valve stem, a collar loosely mounted on said arm means for operating said choke and a stop carried by said arm means, said stop being disposed between said collar and said articulated means whereby upon axial displacement of said manipulating member in the direction from said carburetor said stop serves to limit the movement of said collar axially of said arm means, said arm means being free from any stop for said collar in the opposite direction of axial displacement."

"9. The combination with a carburetor provided with a rotatably adjustable needle valve stem and a choke having a spring tending to resiliently turn said choke to its open position; of an adjusting device having a manipulating member for regulating to any desired extent the adjustment of said needle valve by rotary movement and for setting said choke at any desired extent by axial displacement, arm means carrying said manipulating member at its one end, means at the opposite end of said arm means for pivotal connection with said rotatably adjustable needle valve stem, said arm means comprising telescopically related members for attaining variable effective length of said arm means incident upon axial displacement of said manipulating member, rotation transmitting articulated means for said arm means for effecting rotational displacement of said rotatably adjustable needle valve stem, a collar rotatably loosely mounted on said arm means to afford rotational movement of said arm means freely of said collar, means connecting said collar with said choke for operating said choke upon axial displacement of said collar in one direction and stop means on said arm means for engaging said collar when said manipulating member and therewith said arm means are axially displaced in said one direction, said arm means being free of any stop for said collar in its opposite axial displacement and thereby operate said choke to any desired extent independently of the extent of adjustment of said needle valve stem."

The defense alleges noninfringement, and that plaintiffs' patent is invalid and anticipated by defendant.

The patent relates to a device which combines the choke and needle valve control of carburetors of automobiles. It is no exaggeration to say that the art was crowded at the time Titman made his application for a patent. If Titman's patent is valid, it is within very narrow limitations.

The advantage of unitary control of the choker valve, and the mixture regulating valve with such adjustments so as to permit independent operation of each valve by one member, had been recognized and sought by a number of inventors.

Warner, No. 1,373,469, patent issued April 5, 1921, had the device adaptable to a given type of automobile whose carburetor was commonly controlled by a rotatable button on the dash. Warner's device sought to adapt such control button to the further purpose of control of the choker valve whereby the carburetor and the choker valve might be controlled from the same point within the automobile. Warner's patent, No. 1,400,110, issued December 13, 1921, involved the same idea. This latter patent accomplished the result by having the control member on the instrument board movable toward and away from the dash for control of the choker valve, and rotatable for control of the mixture reg-

ulating valve; each operation of the control member being independent of and without affecting the other valve. The same object was in the mind of McCutchan, No. 1,342,966, issued June 8, 1920. See also Fairchild, No. 1,464,601, issued August 14, 1923.

Both plaintiff and defendant, with these various devices before them, simplified the inventions of the prior art with refinements which suggest mechanical skill, rather than invention. I am inclined to the belief that the defendant was more successful in simplifying the prior art than the plaintiffs. However that may be, I am further convinced that the defendant, some months before the earliest date given by plaintiffs as the date of Titman's invention, devised, completed, and applied to automobiles, at defendant's factory, the device now alleged to infringe plaintiffs' patent. The layout and working drawings were produced and the dates on which the drawings were made were satisfactorily proven to me. The witness Farkas used one of these very devices on his own personal car from December, 1922. Other witnesses have testified to the production of a number of these devices from these working drawings and that some of these were put on some of the Ford service cars in and around Highland Park and Detroit. It is true that the regular shop production did not begin until January, 1924, as shown by further drawings and engineering data. The reason for the delay, I am satisfied, in shop production was due to changes made by the engineering force in the carburetor and the manifold construction.

The identical unitary control device by Olsen and Farkas at defendant's plant, to which reference is made, was made in December, 1922. Any differences between the defendant's device produced in December, 1922, and defendant's present device, are inconsequential so far as the present issue is concerned.

Plaintiffs contend that the alleged use by the Ford Company and by Farkas was experimental in character, and not a public use. The infirmity of plaintiffs' argument lies in the assumption that use must necessarily be a commercial use. It may be that defendant might be precluded from obtaining a patent on his device on the theory that he has abandoned any claim as against the public, but that is a very different thing from saying that its use was abandoned as against a subsequent discoverer or patentee.

In the very recent case of Corona Cord Tire Co. v. Dovan Chemical Corp. (U. S. Supreme Court, April 9, 1928) 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610, the learned court, by Chief Justice Taft, said:

"It is a mistake to assume that reduction to use must necessarily be a commercial use. If Kratz discovered and completed, as we are convinced that he did, the first use of D. P. G. as an accelerator in making vulcanized rubber, he does not lose his right to use this discovery when he chooses to do so, for scientific purposes or purposes of publication, because he does not subsequently sell the rubber thus vulcanized, or use his discovery in trade, or does not apply for a patent for it. It is not an abandoned experiment because he confines his use of the rubber thus produced to his laboratory or to his lecture room. It is doubtless true that Kratz, by his course in respect to his discovery as to the use of D. P. G., has abandoned any claim as against the public for a patent, but that is a very different thing from saying that it was abandoned as against a subsequent discoverer or patentee."

Plaintiffs' expert admitted, in answer to the court's questions, that practically the only difference from the prior Warner patent, No. 1,400,110, was that Warner's slip joint was "clumsy" and that it was located between the instrument board and the dash, instead of between the engine and the dash. Titman took the Warner device and adapted it to a position before the dash, thus making it more readily and more quickly installed. But the Warner patent No. 1,373,469 shows the location of this slip joint between the engine and the dash. A construction similar to plaintiffs' device, so far as slip joints, universal joint, and collar are concerned, is found in McCutchan No. 1,342,966. Indeed, it was demonstrated at the trial with some degree of success that a model of McCutchan is interchangeable with defendant's device. It is true that the McCutchan device is for a somewhat different purpose, i. e., to control two fuels, gasoline to start, and kerosene to operate. However, if we give the plaintiffs the benefit of every presumption, I do not believe the claims apply, by their terms, to the defendant's device. If I comprehend the testimony of plaintiffs' expert Smith, that was his admission.

I am of the opinion that claims 7 and 9 of the patent in suit are not infringed. Furthermore, this record satisfies me, beyond peradventure, that the defendant's device anticipated Titman and was manufactured and used by defendant months before the earliest date given by plaintiffs.

Decree for defendant.